Filed 8/6/13  In re Robert L. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ROBERT L., a Person Coming Under the Juvenile Court Law. | B244586 |
| | (Los Angeles County Super. Ct. No. KJ36392) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| ROBERT L., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Phyllis Shibata, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 2.)  Reversed.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Zee Rodriguez and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Robert L. appeals from an order placing him on probation without wardship after the juvenile court sustained a petition alleging he had committed misdemeanor vandalism. He contends the evidence is insufficient to support the finding. We reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

In March 2011, Robert L., then 13 years old, lived in the B and I Group Home in the City of Pomona. Robert caused a disturbance in the communal kitchen, and police were summoned. Thereafter, a delinquency petition was filed charging Robert with misdemeanor vandalism. The petition specifically alleged Robert "did unlawfully and maliciously damage and destroy real and personal property, to wit, CARPET, FLOORS AND WALLS not his/her own, belonging to B & I Group Home" in violation of Penal Code section 594, subdivision (a).

At the jurisdiction hearing, Renee Hudson, the group home facilities manager, testified that Robert had thrown food around in the kitchen and made verbal threats on March 16, 2011. The prosecutor asked Hudson, "What did you have that was damaged?" Hudson answered, "The kitchen counter, the floor, the floors [sic], and a lot of - - most of the food was destroyed." The prosecutor then inquired, "Okay. And did it cost money to fix what [Robert] had done?" Hudson answered, "Yes." The prosecutor asked whether the cost was less than $400, and Hudson replied that it was.

On cross examination, Hudson testified the kitchen cabinet "had some destruction on it[;]" "[the cabinet] was destroyed by some food items that was [sic] thrown around," but then stated that all food items on the cabinet were removed by wiping the cabinet. Hudson described the food items as "seasoning stuff" and other food from the cabinets and the refrigerator. According to Hudson, the food items thrown on the kitchen cabinet and floor were subsequently cleaned up.

At the close of the People's evidence, the juvenile court denied a defense motion to dismiss the allegation for insufficient evidence pursuant to Welfare and Institutions Code section 701.1. Robert neither testified nor presented other evidence in his defense.

2

After argument by counsel, the juvenile court sustained the petition and found Robert to be a person described by Welfare and Institutions Code section 602. At the disposition hearing, without declaring Robert a ward of the court, the juvenile court placed him on probation for six months pursuant to Welfare and Institutions Code section 725, subdivision (a). Robert appealed. (*In re Do Kyung K.* (2001) 88 Cal.App.4th 583, 587-590.)

## DISCUSSION

1. *Standard of Review*

The same standard governs review of the sufficiency of evidence in juvenile cases as in adult criminal cases: "[W]e review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; see *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.)

2. *The Evidence Was Insufficient to Support a Finding of Vandalism*

To commit vandalism within the meaning of Penal Code section 594, an individual must maliciously deface with graffiti or other inscribed material, damage or destroy any real or personal property not his or her own. (Pen. Code, § 594, subd. (a).) Here, the juvenile court found true the allegation that Robert committed vandalism, and further found that the destruction or damage amounted to less than $ 400 in violation of Penal Code section 594, subdivision (b)(2)(A).

The petition alleged that Robert had damaged and destroyed the carpet, floors and walls of the group home. However, no evidence was presented demonstrating that Robert damaged or destroyed either the carpet or the walls. As for the floors, the facilities manager testified that the only issue as to the floor was that Robert had tossed food, which was then mopped off the tile floor. Robert argues on appeal, as he did before the juvenile court, that because the food-covered floor was easily restored to its original condition by cleaning, the prosecution failed to prove Robert's conduct resulted in damage. Robert acknowledges the statute does not contemplate permanent adverse effects to the particular property. Nonetheless, he maintains there still must be some actual physical harm to the property, which did not occur here, to support a finding of vandalism.

There is no statutory definition of the word "damage" in the context of vandalism. Giving the words their ordinary meaning, and in the absence of ambiguity, we assume the plain meaning of those words govern. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272; see also *Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) According to the Oxford English Dictionary (2013 U.S. version) the primary meaning of the word damage, as a transitive verb, is "to inflict physical harm on (something) so as to impair its value, usefulness, or normal function." (Oxford English Dict., http://oxforddictionaries.com.) Not only does the definition lack an element of permanence, it also extends to the loss of any normal use or function resulting from the physical harm. There is, however, no evidence the food-covered floor resulted in any loss of use or function. While there was testimony that food was destroyed, the record failed to show whether the less than $400

4

spent to "fix what Robert had done" related solely to the cost of that food.  The allegations were specific but there were no charging allegations related to that food, as would be required to sustain the petition on these factual findings.  See *In re Robert G.* (1982) 31 Cal.3d 437, 445 [basis for petition must be specifically alleged, or necessarily included within alleged offense].

Because the People submitted no evidence probative of the vandalism alleged, the jurisdictional finding cannot stand.

## DISPOSITION

The jurisdiction order is reversed.

ZELON, J.

I concur:

WOODS, J.

5

PERLUSS, P. J., Concurring.

I agree the People failed to prove Robert L. committed the offense alleged in the delinquency petition.[1]  I write briefly to make clear my view that vandalism within the meaning of Penal Code section 594, subdivision (a), can be committed by one who maliciously befouls a room—that is, with the unlawful intent to annoy or injure another[2] —even if the resulting mess can be mopped or wiped up.

Section 594, subdivision (a), provides in part, "Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own, in cases other than those specified by state law, is guilty of vandalism: [¶]  (1)  Defaces with graffiti or other inscribed material.  [¶]  (2)  Damages. [¶]  (3)  Destroys."  An act of vandalism does not require proof of permanent damage or injury.  (Cf. *In re Nicholas Y.* (2000) 85 Cal.App.4th 941, 944 [to "deface" as an element of vandalism does not incorporate an element of permanence; "a marring of the surface [of a glass window] is no less a defacement because it is more easily removed"].)  As Justice Zelon explains, using the ordinary meaning of the undefined verb "damages" within the context of section 594, to constitute damage there need be only a temporary impairment of the normal use or function of the property involved.  (See, e.g., Oxford English Dict. <http://oxforddictionaries.com/ us/definition/american _english/damage?q=damage> [as of August 6, 2013]; Dictionary.com http://dictionary.reference.com /browse/damage [August 6, 2013].)

---

[1]  Robert L.'s malicious destruction of the food unquestionably constituted vandalism within the meaning of Penal Code section 594, subdivision (a)(3); but there was no charging allegation in the delinquency petition relating to the food, and the People failed to seek leave to amend the petition to conform to proof.

[2]  "Malice" and "maliciously" are defined by Penal Code section 7, subdivision 4, as "import[ing] a wish to vex, annoy, or injure another person, or an intent to do a wrongful act . . . ."
Statutory references are to the Penal Code unless otherwise indicated.

If there was evidence the house manager had spent several hours cleaning and tidying the kitchen or if she had hired an outside crew to do the work, there would be no question that vandalism had been proved. Or if Robert had smeared feces on the kitchen cabinets and floor rather than throwing food from the refrigerator and scattering seasonings, requiring the use of disinfectant in addition to whatever the group home's normal cleaning routine might be, vandalism would surely be evident. While the cost of clean-up is relevant to whether the offense was a felony or a misdemeanor (compare § 594, subd. (b)(1) [felony if amount of defacement, damage or destruction is $400 or more] with § 594, subd. (b)(2) [misdemeanor if amount is less than $400]), and the unpleasantness of the clean-up effort may be important to our sense of fairness in pursuing criminal charges,[3] either malicious action that creates a cleanable mess is vandalism or it is not. Accordingly, if the evidence had established that Robert's outburst disrupted or interfered with the normal use of the kitchen in any way, until that room was restored to its original condition, its functionality was necessarily impaired; and vandalism proved.

This commonsense interpretation of the statutory language is reinforced by the evolution of Welfare and Institutions Code section 742.16, a provision closely related to section 594. In 1979 former section 594, subdivision (a), provided simply, "Every person who maliciously injures or destroys any real or personal property not his own, in cases otherwise than those specified in this code, is guilty of vandalism." (Stats. 1977, ch. 165, § 8, p. 642.) A separate statute, former section 594.5, subdivision (a), provided, "Any person who, without the consent of the owner, willfully defaces, by paint or any other liquid, the property of another is guilty of a misdemeanor . . . ." (Stats. 1974, ch. 340, § 2, p. 671.) Former section 594.5, subdivision (b), authorized the court as a condition of probation for any person found guilty of defacing property to require the defendant to

---

**3**     Although something seems amiss in calling the police and then filing a delinquency petition based on an obviously troubled 13-year-old boy having made a mess in the kitchen of the group home in which he was living, the back story has not been disclosed and, in any event, is not for us to evaluate.

2

"wash, paint, or repair the defaced property, or otherwise make restitution to the property owner." (*Ibid.*)

In 1979 the two provisions were combined in section 594, which proscribed specified forms of graffiti as well as the malicious damage or destruction of property. (Stats. 1979, ch. 200, § 1, p. 445.) In addition, the newly revised statute incorporated and expanded the probation condition provision in former section 594.5. As enacted effective January 1, 1980, former section 594, subdivision (b)(3), provided, "A court shall require as a condition of probation for any person guilty of vandalism . . . that such person wash, paint, repair or replace the defaced, damaged or destroyed property, or otherwise make restitution to the property owner."[4] The new legislation also added former section 728 to the Welfare and Institutions Code (Stats. 1979, ch. 200, § 4, pp. 445-446), which provided, "If a minor is found to be a person described in [Welfare and Institutions Code] Section 602 by reason of the commission of vandalism, and the court does not remove the minor from the physical custody of the parent or guardian, the court as a condition of probation . . . shall require the minor to wash, paint, repair or replace the defaced, damaged or destroyed property, or otherwise make restitution to the property owner." In 1994 this provision was reenacted and renumbered as Welfare and Institutions Code section 742.16, subdivision (a), without significant substantive change other than to replace the term "vandalism" with a listing of the relevant Penal Code provisions, sections 594, 594.3, 594.4, 640.5, 640.6 and 640.7. (1994 Stats., ch. 909, §§ 10, 11, p. 4606.)

As the Attorney General argues, the Legislature's mandate to the juvenile court to order minors who have committed any type of vandalism, not just acts of graffiti, to "wash, paint, repair or replace" property that has been "defaced, damaged or destroyed" strongly supports the conclusion that the offense includes malicious acts that can be rectified simply by cleaning (mopping and wiping) the affected property. In this case,

---

**4** Former subdivision (b)(3) was deleted from section 594 in 1982. (See Stats. 1982, ch. 1413, § 3, pp. 5402-5403.)

3

however, there was no evidence Robert's actions impaired the functionality of the kitchen or required anything more than, or different from, the post-meal sweeping, wiping and mopping that is undoubtedly part of the daily routine in a group-home kitchen.  It may well have done so, but there was no evidence to support such a finding:  The group-home manager testified only that the dirty cabinet was cleaned by wiping and the tile floor by mopping.  The resulting evidentiary gap requires a reversal of the juvenile court's order sustaining the delinquency petition.  (See *People v. Davis* (July 25, 2013, S198434) ___ Cal.4th ___ [2013 Cal.Lexis 6016, *10] ["'[a] reasonable inference . . . "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.  [¶]  . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence"'"].)


PERLUSS, P. J.


4